687 A.2d 836

**COMMONWEALTH of Pennsylvania,**

v.

**Larry JENKINS, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 21, 1996.

Filed Dec. 16, 1996.

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, for the Commonwealth, appellee.

Before CAVANAUGH, EAKIN and HESTER, JJ.

CAVANAUGH, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County. After a non-jury trial, Larry Jenkins ("Jenkins"), was found guilty of two counts each of: kidnapping, possession of an instrument of crime, unlawful restraint, simple assault, recklessly endangering another person and false imprisonment; and three counts of terroristic threats.

The defendant was sentenced to concurrent sentences of eight to twenty years incarceration for the kidnappings and two and one half to five years for both the terroristic threats and possession of an instrument of crime; sentence was suspended for all of the other counts. On appeal, Jenkins' sole claim is that the evidence was insufficient to prove kidnapping. As there is no merit in this contention, we affirm the judgment of sentence.

Kidnapping is defined at 18 Pa.C.S.A. § 2901 as follows:

(a) A person is guilty of kidnapping if he unlawfully re-moves another a substantial distance under the circumstances from the place where he is found, *or if he unlawfully confines another for a substantial period in a place of isolation*, with any of the following intentions:

(1) To hold for ransom or reward, or as a shield or hostage.

(2) To facilitate the commission of any felony or flight thereafter.

(3) To inflict bodily injury on or to terrorize the victim or another.

(4) To interfere with the performance by public officials of any governmental or political function.

(b) ... A removal or confinement is unlawful within the meaning of this section if it is accomplished by force, threat, or deception ...

18 Pa.C.S. § 2901 (emphasis added).

"It is well settled that the test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the trier of fact could have determined all the elements of the crime have been established beyond a reasonable doubt." *Commonwealth v. Hagan*, 539 Pa. 609, 613, 654 A.2d 541, 543 (1995) (citations omitted).

Reviewing the record in accordance with the standard of review, the facts reveal that on or about November 19, 1994, seventy year-old Gertrude Davis was in her home with her

four year-old great-grandson, James Davis, her eighteen-month old great-granddaughter, and the children's mother, Wanda Davis. Ms. Davis' home is located at 3223 Mount Vernon Street in Philadelphia. At or about 4:00 p.m., Ms. Davis heard a knock at her door. After inquiring who it was and receiving no response, she opened the door. At that time, appellant, Jenkins, pushed his way into the home, knocking Ms. Davis to the floor, causing injury to her shoulder. Jenkins then rushed into the kitchen where he grabbed a six inch knife. James Davis followed Jenkins into the kitchen. Jenkins picked up James Davis and brought him back out to where Ms. Davis was. Jenkins had the knife pointing into James Davis' back and stated "today is the day to die."

Ms. Davis then offered Jenkins money and he took ten dollars from her purse. Appellant ordered Wanda Davis to come downstairs, gave her money, and demanded that she go out and buy him cigarettes. Wanda took this opportunity to leave the home with her daughter. Wanda Davis did not return to the home, but summoned the police, instead. The police arrived outside the house approximately twenty minutes later and they tried to negotiate with Jenkins who was demanding to see his mother. Jenkins' mother eventually arrived at the home, although she was kept outside. At least a dozen times over the next four hours, Jenkins told the police he was going to kill everyone in the house. Throughout the entire ordeal, Jenkins literally *held* the four year-old old at knifepoint, carrying him from room to room. Approximately five hours after the incident began, Jenkins agreed to come out of the residence. He put down James Davis and walked out, leaving the knife inside. Jenkins was arrested in front of Ms. Davis' home. The police then took Ms. Davis to the hospital where she was treated for a fractured shoulder.

Appellant argues that a row home in Philadelphia which is surrounded by police cannot be considered a "place of isolation" for the purposes of the kidnapping statute. We disagree.

The statutory concept of a "place of isolation" is "not geographic isolation, but rather effective isolation from the usual protections of society." *Commonwealth v. Mease,* 357 Pa.Super. 366, 371, 516 A.2d 24, 26 (1986), *citing,* Model Penal Code § 212.1, comment 3. Further, one's own apartment in the city can be a place of isolation, "if detention is under circumstances which make discovery *or rescue* unlikely." *Commonwealth v. Hook,* 355 Pa.Super. 10, 13–14, 512 A.2d 718, 719 (1986), *citing,* Model Penal Code § 212.1, comment 3 (emphasis added). This court in *Mease, supra,* found that appellant's basement met the test for a "place of isolation" in that the victim being kept there had been isolated from the usual protections of society where the police, his friends, his family or anyone who might have been able to rescue him from the appellant's assaults could not reach him. *Id.* at 371, 516 A.2d at 26.

When examining an alleged kidnapping where the victims were not transported elsewhere, our focus must be on whether the circumstances surrounding the detention rendered them effectively isolated from rescue, or the "usual protections of society." We find that appellant's actions in the instant matter created a "place of isolation" within the home of Ms. Davis.

It is uncontradicted that no one was able to reach the victims for the five hours appellant detained them, at knifepoint, locked inside their home. The five hour ordeal ended only when appellant surrendered himself. However, up to the point of appellant's surrender, the fate of both victims was exclusively within the control of the appellant.

Appellant argues that because the police arrived approximately twenty minutes after the incident began, the two victims not only were not "isolated from the protection of society," they were in the very midst of the protectors of society and that rescue was at hand a short time later. This claim is meritless. Although the police did arrive soon after appellant forced his way into Ms. Davis' home, approximately four more hours passed before the appellant decided to sur-

render. During these four hours, appellant made at least a dozen threats to kill both hostages while the seventy year-old victim lay immobilized on the floor from her shoulder injury and the four year-old victim was carried around by the appellant at knifepoint. The trial court correctly noted that from the beginning to the end of the incident, the mere geographic proximity of the police did not make the hostages any less isolated from the "usual protections of society."

Appellant argues that *Commonwealth v. Hook, supra,* is controlling. We find such reliance misplaced. In *Hook,* the unarmed, drunken appellant chased the victim from her apartment to a neighbor's after announcing his intention to rape her. He assaulted the woman and her neighbor in the second apartment, holding them there for approximately an hour before passing out due to his intoxication. The evidence in *Hook* showed that not only were the victims' apartments located above an open business and frequently visited by relatives and business contacts, but the victim had just called a dry-cleaning delivery person whose arrival was imminently expected when the attack occurred. *Id.* at 14–15, 512 A.2d at 720. Significantly, there was no overt hostage conduct and the court found that the "confinement" was incidental to the crime of rape. The court in *Hook* determined that these facts were insufficient to prove that the victims were confined in a "place of isolation" because the record "[d]id not indicate that the victims were confined in a manner that made discovery or rescue unlikely." *Id.* at 15, 512 A.2d at 720.

The instant matter is distinguishable from *Hook.* First, there was no access to the house or victims here, as evidenced by the fact that even after the police arrived, they were unable to effect a rescue for over four hours.[1] Additionally, the appellant here was armed with a six inch knife and showed no likelihood of passing out from intoxication. Furthermore, the victim in *Hook* was able to struggle away from her assailant at

---

1. The Commonwealth correctly notes that the victims in this case were technically never rescued. Rather, the five-hour ordeal ended only when the appellant surrendered himself. Up until that point, the fate of Ms. Davis and her great-grandson were exclusively at the whim of the appellant, regardless of the presence of the police outside the home.

least once, while both victims here were helpless; the seventy year-old woman in the case before us was immobilized by a broken shoulder and her four year-old great-grandson was carried around at knifepoint throughout the ordeal. Finally, while the court in *Hook* determined that the victim's detention was merely incidental to the attempted rape, the detention here was the core crime and not incidental to some other crime. Therefore, unlike *Hook*, we find that more than sufficient evidence existed to show that these two victims were confined in "a place of isolation" where rescue was unlikely.

The judgment of sentence is affirmed.