J. S93015/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| V. | : | |
| | : | |
| RAYON DAMION SCARLETT, | : | |
| | : | |
| Appellant | : | No. 2182 EDA 2016 |
| | : | |

Appeal from the PCRA Order June 22, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000339-2012

BEFORE: DUBOW, SOLANO AND PLATT,[*] JJ.

MEMORANDUM BY DUBOW, J.:                     **FILED FEBRUARY 17, 2017**

Appellant, Rayon Damion Scarlett, appeals *pro se* from the June 22, 2016 Order denying his first Petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-46, challenging the effectiveness of all prior counsel. After careful review, we affirm.

On direct appeal, we summarized the facts underlying Appellant's convictions as follows:

At Appellant's trial, [Victim] testified that, in March 2008, he was living in a third floor bedroom in a house owned by Appellant's own grandmother at 400 East Marshall Street in Norristown. At approximately midnight on March 28, 2008, [Victim] was alone in his bedroom getting ready for bed. [Victim] had taken off his clothes and shoes and was wearing only a tee shirt and boxer shorts when there was a knock at his bedroom door. [Victim]

---

[*] Retired Senior Judge Assigned to the Superior Court.

opened the door and saw Appellant's brothers, ["Adult Brother" and "Minor Brother"], standing in the hallway. [Adult Brother] was pointing an SKS-type assault rifle at [Victim]. [Minor Brother]—who was approximately 12 years old at the time—was carrying a knife.

[Adult Brother] and [Minor Brother] came into the bedroom and [Adult Brother] ordered [Victim] to sit down on the floor, telling him that "The Boss want [*sic*] to talk to you." [Victim] testified that he knew [Adult Brother] meant that Appellant wanted to talk to him, since Appellant was referred to as "The Boss."

With [Victim] sitting on the floor, [Adult Brother] took out his cell phone and—continuing to point the gun at [Victim]—made a call during which he said: "The fish is ready" or "The fish is fried." [Victim] testified that he and the [] brothers are from Jamaica and that, in Jamaican slang, "fish" is a slang term for a snitch or an informant.

Appellant and Wilson then arrived at [Victim's] bedroom. [Victim] testified that Appellant ordered Wilson to tie [Victim] up, and that Wilson did so, binding [Victim's] arms behind his back with an electrical extension cord.

[Victim] testified that Appellant, Wilson, and [Adult Brother] then began rummaging through his belongings. [Victim] testified that he did not see Appellant actually steal anything, but someone—he thought [Adult Brother]—took his earring out of his ear, and that his watch, his chain, and the money from his wallet were stolen.

[Victim] testified that Appellant then sat beside him on the floor with a Bible and "started talking to me about betrayal and stuff like that," accusing [Victim] of being a snitch and of telling the police that Appellant was "selling marijuana out of Smith Street." [Victim] testified that Appellant was "flashing around" what Appellant said was a copy of [a prior statement Victim had given investigators][.] Appellant said he had obtained the statement from his lawyer.

[Victim] testified that Appellant, Wilson, and [Adult Brother] spent the remainder of the night threatening [Victim] and discussing what they should do with him. [Victim] testified that they discussed shooting him, putting a pillow over his head so no one would hear the shot. [Victim] told Appellant that his

grandmother was on the floor below and that she would hear what was happening and call the police. [Victim] testified that Appellant then suggested they take [Victim] to New York "and get rid of [him] somewhere," and [Adult Brother] said that they should go to Home Depot to "get some stuff and cut him up."

[Victim] testified that, during his ordeal: Appellant "told his brother to pee on [Victim]"; that the men stepped on him; and that [Adult Brother] put the barrel of the SKS in [Victim's] mouth and told him to suck on it. [Victim] testified that Appellant ordered him to drink liquid from a Gatorade bottle. When [Victim] refused, [Adult Brother] put the barrel of the SKS to his head and ordered him to drink. [Victim] complied and soon was "throwing up all over" himself.

[Victim] testified that Appellant ultimately left at approximately 4:00 a.m., saying he wanted to get some sleep and telling the others that he would call them to "tell them what to do with [Victim]." After Appellant left, [Adult Brother] said to [Victim]: "You're a good guy, but [Appellant] is my brother so we got to do what he said."

Wilson and [Minor Brother] eventually left to go to a store for cigarettes, taking [Victim's] car keys with them. [Adult Brother] remained sitting on the bed with the SKS pointed at [Victim]. [Adult Brother] eventually fell asleep and [Victim] used the opportunity to escape; [Victim] then ran two blocks to the nearest police station.

[Victim] arrived at the Norristown Police Department at approximately 5:30 a.m. Corporal David Brook testified that, when he arrived, [Victim] was barefoot and dressed only in this underwear, with his hands still bound behind his back with electrical cord. After listening to [Victim's] account of what happened, all available police units proceeded to 400 East Marshall Street, where they encountered [Adult Brother] and [Minor Brother]; the police were able to take [Adult Brother] into custody that night. In the backyard of the residence, the police discovered an SKS assault rifle partly hidden under a doormat.

* * *

During a search of the interior of 400 East Marshall Street, the police discovered that [Victim's] bedroom was in disarray, and that there was a Gatorade bottle and what appeared to be vomit

on the floor. During a subsequent search of 806 Smith Street, the police discovered a copy of [Victim's prior statement to investigators]. The statement was found in a bedroom where the police also discovered items indicating that the bedroom was occupied by Appellant.

An arrest warrant was issued for Appellant, but he was nowhere to be found. Ultimately, Appellant was arrested in Florida in December 2011, following a routine traffic stop, and was returned to Montgomery County, Pennsylvania for trial on charges of kidnapping and related offenses.

*Commonwealth v. Scarlett*, No. 3556 EDA 2013, unpublished memorandum at 1-3 (Pa. Super. filed November 25, 2014).

Appellant elected to proceed by way of a jury trial. On January 14, 2013, a jury found Appellant guilty of the following offenses: Kidnapping with the Intent to Facilitate the Commission of a Robbery; Kidnapping with the Intent to Terrorize; Conspiracy to Commit Kidnapping; and Terroristic Threats.[1] On June 25, 2013, the trial court sentenced Appellant to an aggregate term of 6 to 12 years of imprisonment, followed by three years of probation.

Following sentencing, the trial court granted trial counsel's Motion to withdraw as counsel for Appellant. The trial court simultaneously appointed appellate counsel. Appellate counsel filed a timely Post-Sentence Motion, and subsequent appeal to this Court. On November 25, 2014, this Court affirmed Appellant's Judgment of Sentence. *Scarlett, supra*. Appellant

---

[1] 18 Pa.C.S. § 2901(a)(2); 18 Pa.C.S. § 2901(a)(3); 18 Pa.C.S. § 903(a)(1); and 18 Pa.C.S. § 2706, respectively. The jury acquitted Appellant of one count of Robbery.

filed a *pro se* petition for allowance of appeal in the Supreme Court of Pennsylvania, which that court denied on May 4, 2015. Our Supreme Court denied Appellant's *pro se* application for reconsideration on June 15, 2015.

On August 24, 2015, Appellant filed a timely *pro se* PCRA Petition. The PCRA court appointed PCRA counsel, who filed a Petition to Withdraw as counsel and an accompanying no-merit letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Following an independent review of the record, the trial court granted PCRA counsel's Petition and filed a Notice of Intention to Dismiss PCRA Petition Without a Hearing. Appellant filed a *pro se* response.

The PCRA court dismissed Appellant's Petition, and Appellant timely appealed. On appeal, Appellant raises three issues:

> 1. Whether the PCRA court erred by dismissing without a hearing the Appellant's PCRA petition which claims all counsel are ineffective by failing to raise the claim that the evidence is legally insufficient to prove every element of the kidnapping related offenses.
>
> 2. Whether the PCRA court erred by dismissing the PCRA petition which claims all counsel are ineffective by failing to object to and appeal the trial court's use of Appellant's 5th Amendment rights to both remain silent and to not incriminate himself as a factor warranting consecutive sentences in the aggravated ranges.
>
> 3. Whether the PCRA court erred by dismissing the PCRA petition which claims all counsel are ineffective by failing to raise the claims that trial counsel was ineffective in failing to adequately discuss and explain both the terms and availability of a plea offer for 2 – 4 years on one count of kidnapping.

Appellant's Brief at 4.

When reviewing the denial of PCRA Petition, "we examine whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014) (internal quotation marks and citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014) (citation omitted). When the PCRA court denies a petition without an evidentiary hearing, we "examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing." **Commonwealth v. Khalifah**, 852 A.2d 1238, 1240 (Pa. Super. 2004) (citation omitted).

All three of Appellant's issues contend that trial and appellate counsel provided ineffective assistance to Appellant. In analyzing claims of ineffective assistance of counsel, we presume that counsel was effective unless the PCRA petitioner proves otherwise. **Commonwealth v. Williams**, 732 A.2d 1167, 1177 (Pa. 1999). In order to succeed on a claim of ineffective assistance of counsel, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the

appellant prejudice. ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). "[Where] the underlying claim lacks arguable merit, counsel cannot be deemed ineffective for failing to raise it." ***Commonwealth v. Koehler***, 36 A.3d 121, 140 (Pa. 2012). Appellant bears the burden of proving each of these elements, and his "failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009). With this standard in mind, we address each of Appellant's claims.

## Sufficiency of the Evidence

In his first issue, Appellant avers that all prior counsel were ineffective for failing to raise and litigate the claim that the evidence was insufficient to sustain his kidnapping conviction because the victim was not held in a place of isolation. Appellate counsel did not raise this claim on direct appeal. This argument is without merit, however, as the underlying sufficiency claim is without merit.

Appellant was convicted of two counts of kidnapping, as defined by the following provision:

> **(a) Offense defined.--** Except as provided in subsection (a.1), a person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:
>
> (1) To hold for ransom or reward, or as a shield or hostage.
>
> (2) To facilitate commission of any felony or flight thereafter.

(3) To inflict bodily injury on or to terrorize the victim or another.

(4) To interfere with the performance by public officials of any governmental or political function.

18 Pa.C.S. § 2901(a).

Appellant avers that prior counsel should have challenged the sufficiency of the evidence supporting the determination that he confined the victim for a substantial period of time, and in a place of isolation. While Appellant mentions the 'substantial period of time' element, his argument focuses only on the 'place of isolation' requirement.

As this Court recently reiterated,

The concept [of a place of isolation] is "not geographic isolation, but rather effective isolation from the usual protections of society." *Commonwealth v. Mease*, 357 Pa.Super. 366, 516 A.2d 24, 26 (1986) (citation omitted). "[O]ne's own apartment in the city can be a place of isolation, 'if detention is under the circumstances which make discovery *or rescue* unlikely.'" *Commonwealth v. Jenkins*, 455 Pa.Super. 152, 687 A.2d 836, 838 (1996) (quotation omitted) (emphasis in original) (holding that the appellant isolated the victims where he entered the victims' home and held the child victim at knifepoint when police arrived). The requirement that the victim be confined in a place of isolation does not require that the victim be left alone; the fact that other people are present does not necessarily negate the victim's isolation from the usual protections of society. *See Mease, supra* (holding that where the appellant confined the victim in the appellant's basement, and appellant's friends were present, the evidence was sufficient to demonstrate isolation for kidnapping purposes).

*Commonwealth v. Green*, 149 A.3d 43, 49 (Pa. Super. 2016) (quoting *In re T.G.*, 836 A.2d 1003, 1008 (Pa. Super. 2003)).

As is apparent from the record, Appellant did all that was in his power to isolate Victim. Although the kidnapping took place in an urban setting, Appellant used a gun, a knife, restraints, and physical violence to control the movement of Victim.

Moreover, although Victim was able to escape in this case, he did so only after the offense of kidnapping was complete, and despite Appellant's best efforts. Victim was bound, held at gunpoint, and terrorized for more than five hours before he managed to escape. He was only able to do so because the man charged with holding him at gunpoint fell asleep.

Finally, Appellant avers that Victim's bedroom cannot be considered a place of isolation because Appellant's grandmother was also present in the home. Although Appellant's own grandmother was asleep in the same residence where Appellant held Victim, this Court has previously held that a victim may be held in a place of isolation even if others are present. ***Mease, supra*** at 26. Moreover, Appellant's grandmother was asleep, and Appellant and his co-conspirators took care not to wake her up and alert her to their crimes.[2]

In light of those facts and based upon the record before us, we conclude that the trial court correctly determined that there are no genuine

---

[2] In fact, it would seem reasonable to infer from the testimony presented at trial that Victim is alive at least in part because Appellant was afraid that shooting Victim in the head would wake his grandmother up and alert her to the kidnapping in progress.

issues of material fact regarding this claim. It is clear from the evidence presented at trial that the Commonwealth sustained its burden of proving kidnapping, and prior counsel cannot be found ineffective for failing to raise a meritless claim to the contrary.

**Right to Remain Silent at Sentencing Allocution**

Appellant next avers that trial counsel was ineffective for failing to object at sentencing when "the court abused its discretion and committed reversible error by considering Appellant's assertion of innocence as a factor to sentence him to consecutive sentences in the aggravated range." Appellant's Brief at 16. Specifically, Appellant objects to the sentencing court's comments to Appellant that "[m]ention has been made that even as we speak[,] notwithstanding the evidence upon which a jury unanimously, unanimously [*sic*] concluded that you were guilty beyond a reasonable doubt of these charges, you continue to maintain your innocence." Appellant's Brief at 16 (citing N.T., 6/25/13, at 48-49). Appellant avers that this brief reference to his innocence claim indicated that the trial court impermissibly used his Fifth Amendment right against self-incrimination to impose a harsher sentence in the aggravated range. Appellant argues, without citation to case law from this Commonwealth, that the Fifth Amendment bars a court from considering a defendant's silence as to remorse at sentencing as evidence of a lack of remorse. Appellant's Brief at 17.

In ***Commonwealth v. Bowen***, this Court held that "a court may not consider a defendant's silence at sentencing as indicative of his failure to take responsibility for the crimes of which he was convicted." ***Commonwealth v. Bowen***, 975 A.2d 1120, 1121 (Pa. Super. 2009). Therein, Bowen chose to remain silent at trial and during sentencing. ***Id.*** at 1121. In justifying its aggravated-range sentence, the trial court cited, *inter alia*, Bowen's failure to show remorse for his crimes or to take responsibility for them, even after the jury's verdict. ***Id.*** at 1121-22. On appeal, this Court observed that "it is undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs." ***Id.*** at 1125. Nevertheless, it held that "a court may not consider a defendant's silence at sentencing as indicative of his failure to take responsibility for the crimes of which he was convicted" and "silence at sentencing may not be the sole factor in determining a defendant's lack of remorse." ***Id.*** at 1121, 1127.

Here, unlike the defendant in ***Bowen***, Appellant allocuted at sentencing, as follows:

> Your Honor, first off I would like to apologize for my abusive behavior in your Courtroom during the trial in January. For a long time I have not been able to give my side of the story and was only able to sit back and listen to what was being said about me. I maintain my innocence.

* * *

>Finally, I don't think that [the Commonwealth's] prosecution was intentionally misdirected, but I don't think that [the prosecutor] understood the nature and depth of my situation. Things did have happen [*sic*] in the community that I would never approve of and I'm sorry that it occurred, but please believe me I was not aware of the situation.
>
>I did not witness this incident personally but when I did go to the residence that night I was not armed and had no intention to harm anyone in my grandmother's house or anywhere else.

N.T., 6/25/13, at 26-27, 29.

Additionally, Appellant testified at trial, over which the sentencing court also presided, and repeatedly denied the allegations against him, claiming that the victim's testimony was "all a made-up story." N.T., 1/11/13, at 86.

Thus, the court could not have relied on Appellant's silence to determine that he lacked remorse and failed to take responsibility for his crimes, because Appellant did not remain silent.

Moreover, it is unclear from the record what impact, if any, the Appellant's innocence claims had on the sentencing court's ultimate decision. It is clear, however, that the court considered numerous other factors in imposing sentence, such as the "very disturbing" nature and circumstances of the offense, the terror and torture that Appellant put his victim through, the weapon used in the commission of the kidnapping, Appellant's nearly-four-year flight from authorities in Florida despite knowing he was wanted in Pennsylvania in the instant case, and the fact that Appellant used his

juvenile brother "to assist [him] in perpetrating this horrendous crime[.]" N.T. 1/11/13, at 45-50. The court's comments at sentencing indicate that, after observing Appellant at trial and sentencing, to the extent it considered his lack of remorse and failure to accept responsibility, it did so "in relation to protection of the public, the gravity of the offense, and [his] rehabilitative needs." **Bowen, supra** at 1125.

Thus, even if trial counsel had raised a timely objection to the trial court's comments about Appellant's statements at sentencing, we would discern no abuse of discretion on this basis. **See Bowen, supra** at 1127-28 (concluding that, because the trial court relied upon several other legitimate aggravating factors in imposing sentencing, Bowen was not entitled to relief on his discretionary-aspects-of-sentence claim). As trial counsel cannot be found ineffective for failing to raise a meritless claim, the trial court did not err in concluding that Appellant is not entitled to relief on this claim.

### **Erroneous Legal Advice During Plea Bargaining**

In his final claim, Appellant avers that trial counsel rendered ineffective assistance when he advised Appellant not to accept a plea agreement because "the [Commonwealth] cannot prove kidnapping, since a bedroom is not a place of isolation." Appellant's Brief at 24. This final issue is waived because, as the Commonwealth notes, Appellant raised it for the first time in his Brief to this Court.

It is beyond dispute that "issues not raised in a PCRA petition cannot be considered on appeal." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011). Moreover, "[w]here the [PCRA] court denied relief on one theory, a defendant may not obtain appellate relief on a new theory for that same relief." *Commonwealth v. Rosser*, 135 A.3d 1077, 1086 (Pa. Super. 2016) (citation omitted).

Although Appellant did present a claim to the PCRA court averring that trial counsel was ineffective during the plea bargaining process, the claim raised below was factually and legally distinct from the claim he now raises.

In his initial *pro se* PRCA Petition, Appellant averred that trial counsel notified him of the plea offer, but "did not explain the details, discuss it with [him], or advise [him] in any manner." Motion for Post Conviction Collateral Relief, filed 8/24/15, at 4. In PCRA counsel's *Turner*/*Finley* letter, she stated that Appellant wished to raise a claim that counsel failed to notify Appellant of the offer altogether. Petition to Withdraw, filed 3/31/16, Exhibit A, at 3 (unpaginated). In Appellant's *pro se* response to the PCRA court's Notice of Intention to Dismiss PCRA Petition Without a Hearing, not only did Appellant not correct PCRA counsel's characterization of his plea bargain claim, he seemingly abandoned it:

> While [Appellant] does acknowledge that he expressed understanding the terms of the plea deals offered to him on record at trial, he still contends that [trial counsel] did not adequately explain the details of those deals. Despite this, [Appellant] respectfully concedes in favor of [the PCRA court] on the following paragraphs/claims:

  • Paragraph one (1) Plea Offer

Response to Proposed Dismissal of Petition for Post Conviction Collateral Relief, filed 6/24/16, at 1-2.

In response, the PCRA court noted that the certified record shows that Appellant was told about the 2½ - 5 year plea deal in open court, and acknowledged on the record that he had had a sufficient opportunity to discuss it with his attorney. Trial Court Opinion, at 6-8.

In the face of evidence belying his prior claim, Appellant has now adopted a new theory of relief on appeal. Appellant no longer alleges that trial counsel failed to notify him of the offer, or failed to discuss it with him. Instead, Appellant now avers the opposite: that trial counsel discussed the offer with him and advised him not to accept it. Specifically, Appellant states:

> Appellant rejected a 2 – 4 year or 2½ - 5 year plea deal as a result of counsel's misadvice. Trial counsel misadvised [Appellant] that the prosecutor cannot prove the elements of the kidnapping offense because the victim was not held in a place of isolation. This caused [Appellant], following counsel's bad advice, to reject two favorable plea deals.

Appellant's Brief at 20.

Appellant had three opportunities to articulate to the PCRA court below his theory of relief in his plea offer claim. At no point in any of these instances did Appellant advance the theory he now raises: that trial counsel did advise him of the plea offer and advised him not to accept it based on

constitutionally inadequate advice. That claim is, therefore, waived.[3] *Ousley, supra* at 1242.

Having determined that Appellant is not entitled to relief on any of his claims, we affirm the PCRA court's June 22, 2016 Order dismissing his Petition.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2017

---

[3] Appellant's Brief also raises a heretofore unmentioned claim pursuant to *Padilla v. Kentucky*, 599 U.S. 356 (2010), averring that if trial counsel had informed him about the deportation consequences of a conviction, he would have "accept[ed] 2½ - 5 year and be[en] deported, instead of going to trial and receiving a 6 – 12 year sentence and still be deported[.]" Appellant's Brief at 22. This claim is also waived, as Appellant failed to raise it below. *Ousley, supra* at 1242.

- 16 -