J-S40026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ABDUL MALIK SHAKUR | |
| Appellant | No. 436 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 7, 2022
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0001528-2020

BEFORE:   PANELLA, P.J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.:                   **FILED JANUARY 9, 2023**

Appellant, Abdul Malik Shakur, appeals from his judgment of sentence of twenty to forty years' imprisonment for robbery, kidnapping, aggravated assault and weapons offenses.  We affirm eighteen of Appellant's convictions, vacate seven convictions, and remand for resentencing on the eighteen convictions we have affirmed.

The evidence adduced during trial demonstrates that at about 9:00 p.m. on October 5, 2019, Appellant and an unidentified co-conspirator forced their way into the home of Devon Craig in Chester Township, Delaware County, where Craig was playing video games in his living room with his cousin, Anwaar Sammons, and Sammons' four-year-old daughter and fifteen-year-old son. Appellant was armed with a gun and the other individual was armed with a knife.  Neither man wore a mask or other item to hide their identity.

Appellant yelled at everyone to get onto the floor while he and his co-conspirator ransacked the home, demanding that the occupants turn over "the stuff." The victims pleaded with Appellant, telling him that they had no idea what Appellant was looking for, but Appellant continued to terrorize them. Putting his gun to the head of the four-year-old little girl, Appellant told Craig and Sammons that he would kill her unless they got what they came for. N.T., 11/3/2021, at 80-92; N.T., 11/4/2021, at 6-12.

Appellant and his cohort remained in Craig's residence for forty-five minutes to one hour. They ransacked the residence, and Appellant repeatedly hit Craig, Sammons, and the fifteen-year-old boy in the back of their heads with his firearm and stole both Craig's and Sammons' wallets. While threatening the victims, Appellant informed them that he did not care if the police arrived; he would get in a shootout with them. When Appellant again demanded "the stuff," Craig told Appellant that he did not know what they were looking for but to just take his truck. In response, Appellant and his cohort told him, "Okay you can come for the ride." They ordered Craig to stand and strip down to his underwear, and they separated Craig from his family and forced him into the hallway towards the front door. Craig knew that he probably would not return if he left with Appellant, so he fought for his life in the hallway. Despite the attempts by Appellant's cohort to stab Craig, he was able to fight them off and push them out the door. Sammons pushed a couch in front of the door and immediately called the police.

Appellant and his fellow intruder stole Craig's pickup truck and drove away. *Id.*

Sammons and Craig gave a description of Appellant and the other intruder to police that evening. Craig gave his description while at the hospital receiving treatment for his injuries. N.T., 11/4/2021, at 18. Two days later, while at a gas station in Chester, Sammons observed Appellant, who was wearing the same outfit that he wore during the burglary. Instead of approaching him, Sammons took down the license plate number of the car that Appellant was driving. Sammons relayed this information to Detective Mullen of the Chester Police Department, who tracked the license plate to Appellant's girlfriend.

Detective Mullen arranged a photo array that he showed Sammons. Before the detective could arrange the photo array on the table, Sammons pointed out Appellant, stating he was "one million" percent sure it was him. Sammons also told Detective Mullen that the other home invader was not in the array. After the incident, fearing for his life and the life of his family, Craig left town and did not respond to Detective Mullen's attempts to contact him. N.T., 11/4/2021, at 19-24.

Appellant was arrested in October 2019, and his case proceeded to a bench trial in early November 2021. On November 8, 2021, the court found Appellant guilty of the following counts in his criminal information: Counts 2, 3, 6 and 7 — robbery; Counts 11 and 12 — firearms violations; Count 13 — possession of a firearm prohibited; Count 13  — possession of an instrument

- 3 -

of crime; Counts 18 and 20 — aggravated assault; Count 26 — theft by unlawful taking; Count 31 — burglary; Count 34 — kidnapping; Counts 44, 45, 46 and 47 — unlawful restraint; Count 50 — robbery of a motor vehicle; Count 56 — conspiracy to commit robbery; Counts 70 and 74 — conspiracy to commit aggravated assault; Count 93 — conspiracy to commit burglary; Count 97 — conspiracy to commit kidnapping; Count 103 — conspiracy to commit unlawful restraint; and Count 105 — conspiracy to commit robbery of a motor vehicle.

On January 7, 2022, the court imposed an aggregate sentence of twenty to forty years' imprisonment on twenty-five counts of conviction. The court imposed consecutive sentences for Count 2 (robbery), Count 12 (possession of firearm prohibited), Count 20 (aggravated assault), Count 26 (theft), and Counts 44-45 (unlawful restraint). All sentences on remaining counts ran concurrently. Appellant filed timely post-sentence motions, which the court denied, and a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal, which we reorder for purposes of convenience:

> 1. Whether the evidence was insufficient to establish Appellant's identity as the person who committed the charged offenses beyond a reasonable doubt in order to sustain the verdicts of guilt, in violation of Appellant's state and federal constitutional rights?
>
> 2. Whether the evidence was insufficient to establish Appellant's guilt for the offense of robbery of a motor vehicle beyond a

reasonable doubt, in violation of Appellant's state and federal constitutional rights?

3. Whether the evidence was insufficient to establish Appellant's guilt for the offense of kidnapping Devon Craig beyond a reasonable doubt, in violation of Appellant's state and federal constitutional rights?

4. Whether the trial court erred as a matter of law and abused its discretion by admitting a prior consistent statement of complainant Sammons where its introduction constituted improper bolstering of the witness's credibility?

5. Whether the trial court imposed an illegal sentence by sentencing Appellant on two inchoate crimes on counts 20 and 74, in violation of 18 Pa.C.S.A. § 906?

6. Whether the trial court imposed illegal sentences by sentencing Appellant on eight conspiracy charges, in violation of 18 Pa.C.S.A. § 903(c)?

7. Whether the sentence of 10 to 20 years of incarceration imposed for conspiracy to commit aggravated assault as a second-degree felony, on count 74, constituted an illegal sentence where it exceeded the statutory maximum penalty?

8. Whether the sentence imposed for theft by unlawful taking constitutes an illegal sentence as it should have merged with one of the robbery convictions for purposes of sentencing; and where no information was provided regarding the value of what was taken, from whom it was taken and what was taken in order to support a first-degree misdemeanor conviction?

9. Whether the trial court erred as a matter of law and violated the discretionary aspect of sentencing when it imposed a manifestly excessive and unreasonable aggregate sentence of 20 to 41 years of incarceration?

Appellant's Brief at 5-7.

Appellant's first three arguments challenge the sufficiency of the evidence adduced during trial. Whether the evidence was sufficient to sustain

the charges presents a question of law. ***Commonwealth v. Toritto***, 67 A.3d

29 (Pa. Super. 2013) (*en banc*). Our standard of review is *de novo*, and our

scope of review is plenary. ***Commonwealth v. Walls***, 144 A.3d 926 (Pa.

Super. 2016). In conducting our inquiry, we examine:

> whether the evidence at trial, and all reasonable inferences
> derived therefrom, when viewed in the light most favorable to the
> Commonwealth as verdict-winner, [is] sufficient to establish all
> elements of the offense beyond a reasonable doubt. We may not
> weigh the evidence or substitute our judgment for that of the fact-
> finder. Additionally, the evidence at trial need not preclude every
> possibility of innocence, and the fact-finder is free to resolve any
> doubts regarding a defendant's guilt unless the evidence is so
> weak and inconclusive that as a matter of law no probability of
> fact may be drawn from the combined circumstances. When
> evaluating the credibility and weight of the evidence, the fact-
> finder is free to believe all, part or none of the evidence. For
> purposes of our review under these principles, we must review the
> entire record and consider all of the evidence introduced.

***Commonwealth v. Rojas-Rolon***, 256 A.3d 432, 436 (Pa. Super. 2021).

Evidence may be entirely circumstantial so long as it links the accused to the

crime beyond a reasonable doubt." ***Commonwealth v. Koch***, 39 A.3d 996,

1001 (Pa. Super. 2011).

Appellant argues that the Commonwealth presented insufficient

evidence to establish his identity as the perpetrator of the offenses because

Craig failed to make a positive in-court identification. Appellant overlooks the

fact that Sammons positively identified him. No relief is due.

"Evidence of identification need not be positive and certain to sustain a

conviction." ***Commonwealth v. Jones***, 954 A.2d 1194, 1197 (Pa. Super.

2008). "Out-of-court identifications are relevant to our review of sufficiency

- 6 -

of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh." *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011).

In *Commonwealth v. Wilder*, 393 A.2d 927 (Pa. Super. 1978), we held that a positive identification of a defendant by one witness, who testified that he had no doubt as to the defendant's identity, was sufficient to support the defendant's convictions for possessing instruments of crime, criminal conspiracy, and attempted burglary. *Id.* at 928; *see also Commonwealth v. Patterson*, 940 A.2d 493, 500-02 (Pa. Super. 2007) (evidence of defendant's identity sufficient where witness stated positively and without hesitation that defendant was perpetrator).

Here, Sammons never wavered in his identification of Appellant before trial or during trial, when he testified that he was "one million percent sure" that Appellant was the perpetrator. Sammons had a clear picture of the man who held a gun to his daughter's head and beat his son with the same gun. Sammons testified that he was trying to remain calm for his children, which enabled him to have a clear head, and that neither man was wearing a mask for the twenty or so minutes that they were inside the house. During that time, Sammons was not always on the ground and had time to stare at the home invaders. Two days later, when he saw Appellant at a gas station, he recognized him immediately, telling the person he was with, "That's him." He took down the license plate number of Appellant's car. From that information,

the police compiled a photo array. Sammons immediately selected Appellant from the array, stating, "That's the guy that held the gun to my daughter's head." Sammons also stated that the second man was not in the array, lending additional credence to his memory.

Appellant ignores Sammons' identification testimony and focuses instead on Craig's inability or unwillingness to identify Appellant at trial. The authorities cited above, however, demonstrate that a positive identification by only one witness, Sammons, is sufficient to establish Appellant's identity. Craig's failure to identify Appellant went to the weight of the evidence but not to its sufficiency. *Orr*, 38 A.3d at 876 (any indefiniteness and uncertainty in identification testimony goes to its weight).

Appellant posits that Sammons' absolute certainty somehow makes his identification less believable. Not only is this counterintuitive, but also it contradicts the principle that a single witness's positive identification is sufficient to establish the defendant's identity.

Therefore, viewing the evidence in the light most favorable to the Commonwealth, Appellant's challenge to identification testimony fails.

Next, Appellant argues that the evidence is insufficient to sustain his conviction for robbery of a motor vehicle because the Commonwealth failed to prove that Appellant took Craig's truck through the use of force, intimidation or the inducement of fear in the victim. We disagree.

The Crimes Code provides that a person commits robbery of a motor vehicle "if he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle." 18 Pa.C.S.A. § 3702(a). The Commonwealth must therefore prove the following elements to establish the commission of this crime: (1) the stealing, taking or exercise of unlawful control over a motor vehicle; (2) from another person in the presence of that person or any other person in lawful possession of the vehicle; and (3) the taking must be accomplished by the use of force, intimidation or the inducement of fear in the victim. **Commonwealth v. Jones**, 771 A.2d 796, 798 (Pa. Super. 2001). Appellant does not dispute the evidence relating to the first two of these elements. He only contends that the Commonwealth failed to prove the third element of taking through the use of force, intimidation or inducement of fear.

The evidence demonstrates, however, that Appellant used both force and intimidation to obtain Craig's truck. Craig testified that Appellant "told everybody to get on the ground, he pistol-whipped me and the kids, beat up Anwar, kept smacking me with the gun, searching the house, looking for drugs, money, anything that they could think of. And after they couldn't find nothing, you know, they basically took my truck . . ." N.T., 11/3/21, at 87; **see also id.** at 99 ("they stole my truck"). Moreover, Sammons testified that while the perpetrators were terrorizing the four victims in the living room, Craig offered his truck out of desperation and as a way to try and save family

- 9 -

members. N.T., 11/4/21, at 12 (Craig's statement to robbers that "if you all want you can have my truck"). The perpetrators subsequently drove away in Craig's truck.

Appellant claims that Craig's offer of his truck did not satisfy the element of taking through force, intimidation or fear, because there was no evidence that the intruders took Craig's keys or that Craig was aware that his truck was missing until after the police had arrived. The fact that the intruders took Craig's truck instead of some other vehicle creates the inference that they took Craig's keys during the home invasion. Furthermore, the circumstances surrounding this home invasion indicate that the intruders obtained the keys through force, intimidation or fear.

Accordingly, we reject Appellant's challenge to the sufficiency of the evidence underlying his conviction for robbery of a motor vehicle.

Next, Appellant argues that the evidence is insufficient to sustain his conviction for kidnapping Craig, because Appellant's act of forcing Craig into the hallway outside his residence did not constitute removal of a substantial distance from where Craig was found or unlawful confinement for a substantial period of time in a place of isolation. We disagree.

The Crimes Code provides in relevant part:

[A] person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:

(18)  To hold for ransom or reward, or as a shield or hostage.

(2) To facilitate commission of any felony or flight thereafter.

(3) To inflict bodily injury on or to terrorize the victim or another.

(4) To interfere with the performance by public officials of any governmental or political function.

18 Pa.C.S.A. § 2901(a).  To establish that Appellant was guilty of kidnapping, the Commonwealth was required prove, *inter alia*, that Appellant either removed Craig a "substantial distance under the circumstances" from the place where he was found or unlawfully confined Craig for a "substantial period in a place of isolation." ***Id.***

Appellant focuses on the portion of this episode in which he and his cohort ordered Craig to accompany them out of Craig's residence.  Craig was directed into the hallway outside the residence, but there, Craig fought off both intruders and escaped back into the residence.  Sammons then barricaded the door to the residence with a couch.  According to Appellant, the incident in the hallway did not constitute kidnapping because Craig was not removed a substantial distance from the residence and was not confined for a substantial period in a place of isolation.  We see no need to address whether the incident in the hallway constitutes kidnapping, because there is another reason for upholding his kidnapping conviction—specifically, Appellant's act with his fellow intruder of holding four individuals at gunpoint for 45 minutes to one hour in Craig's residence.

Our discussion in **Commonwealth v. Harris**, 2021 WL 3163071 (Pa. Super., Jul. 27, 2021) (unpublished memorandum),[1] is helpful to our analysis of this issue. The **Harris** court wrote:

[I]n **Commonwealth v. Hook**, 512 A.2d 718 (Pa. Super. 1986)[,] Hook forced his way into a woman's apartment, which was located above a clothing store that was open for business at the time. The woman escaped Hook, running into the apartment of an elderly, female neighbor. Hook followed her and, after assaulting both women, he passed out from intoxication. Hook was later convicted of kidnapping, but this Court reversed on appeal, concluding that the Commonwealth had failed to prove that Hook confined the women in a place of isolation. We stressed that there were three occupied apartments on the same floor, and a clothing store that was open for business on the first floor when the crime occurred. We also observed that the "[e]ntrance to the stairway that led to the apartments was through a door which adjoined the door to the clothing store[,]" and that one victim was expecting a dry-cleaning delivery at the time Hook barged into her apartment. These facts, we concluded, made it "clear that there was open access to the area." Thus, it was not a "place of isolation" for the crime of kidnapping.

[A]fter **Hook**, our Supreme Court decided **Commonwealth v. Rushing**, 99 A.3d 416 (Pa. 2014). There, Rushing had, *inter alia*, handcuffed and bound several victims in their own home, threatened them repeatedly to be quiet, assaulted them, and placed them all in great fear. Our Supreme Court concluded that these facts made the case distinguishable from **Hook**, where "the mode of confinement did not render discovery or rescue of the victims unlikely." The **Rushing** Court stressed that,

> the degree of isolation from discovery and rescue and the usual protections of society remain the touchstone in determining whether the statutory element of confinement in a place of isolation is satisfied. Applying the facts of this appeal to the definition of [']place of isolation,['] we have no hesitancy in

---

[1] Pursuant to Pa.R.A.P. 126(b), we may cite unpublished memoranda filed after May 1, 2019 as persuasive authority.

- 12 -

> determining that, although imprisoned in their own home, the victims were confined by [Rushing] in a place of isolation.

*Id.*, [99 A.3d] at 426.

The present case is controlled by *Rushing*, rather than *Hook*. Unlike in *Hook*, there was no open or easy access to the victim's apartment. Appellant confined the victim during the early-morning hours when no one was expected to arrive. When the victim's boyfriend attempted to enter the victim's apartment the following evening, he could not get in because the door was locked. Ultimately, the police had to force their way into the victim's home using a crowbar.

Additionally, the victim in this case was not able to escape and flee her apartment, as the victim did in *Hook*. Instead, Appellant tied up the victim, and then punched her in the face and begged her to be quiet when she screamed. Later, when the victim tried to run for the door, Appellant dragged her back to the bed and punched her so hard she was rendered unconscious. Appellant then choked her when she tried to dial 911. These facts are similar to those in *Rushing*, and sufficiently demonstrate that Appellant caused the victim to be "separated from the normal protections of society in a fashion that makes imminent discovery or rescue unlikely." *Rushing*, 99 A.3d at 427. *See also Commonwealth v. Jenkins*, 687 A.2d 836, 839 (Pa. Super. 1996) (finding, where an elderly woman and her great grandson were held at knifepoint inside their own home for five hours, the victims were unreachable, and the fate of both victims was exclusively in the hands of defendant, the victims were effectively isolated from rescue or the usual protections of society, and, thus, were in a place of isolation); *Commonwealth v. Mease*, 516 A.2d 24, 26 (Pa. Super. 1986) (concluding the defendant's basement constituted a 'place of isolation' as the victim, being confined there for several hours, beaten, stabbed, and shot in the back of the head, had been confined where discovery and rescue were unlikely and isolated from the usual protections of society).

*Id.*, 2021 WL 3163071, at *5-6 (some internal citations omitted).

Like *Harris*, the present case is similar to *Rushing*. As the

Commonwealth pointed out in its closing argument, N.T., 11/4/21, at 154,

Appellant and the other intruder held four victims, including Craig, at gunpoint in Craig's apartment for a half hour.[2] Appellant pointed his gun at the head of the four-year-old victim, and Appellant and his cohort pistol-whipped the three other victims. There was no easy or open access to Craig's residence, and the victims were not able to escape. Thus, Appellant "unlawfully confine[d all four victims] for a substantial period in a place of isolation," 18 Pa.C.S.A. § 2901(a), since his victims were "separated from the normal protections of society in a fashion that makes imminent discovery or rescue unlikely." **Rushing**, 99 A.3d at 427. For these reasons, Appellant's challenge to the sufficiency of the evidence pertaining to his kidnapping conviction fails.

In his fourth argument, Appellant complains that the trial court abused its discretion during Sammons' direct examination by permitting the Commonwealth to introduce an audio recording of Sammons' statement to police identifying Appellant from a photo array. Appellant argues that Sammons had already identified Appellant during his direct testimony and had not been impeached with prior inconsistent statements. Thus, Appellant concludes, Sammons' prior consistent statement constituted hearsay, and its admission improperly bolstered Sammons' credibility. We disagree.

Appellant argues:

Sammons testified that he was absolutely certain that [Appellant] was the man with the gun involved in the instant incident (see

---

[2] The record, viewed in the light most favorable to the Commonwealth, reflects that this time period was between 45 minutes to one hour.

- 14 -

N.T. 11/4/21, at 9, 21). At no point was Sammons impeached with any prior inconsistent statements that he made regarding his identification of [Appellant] nor did Sammons ever testify that he did not recall anything about his identification. Nevertheless, over objection, the trial court permitted the Commonwealth to play an audio statement of Sammons identifying [Appellant] from a photo array.

Appellant's Brief at 33.

The admission of evidence

is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus, our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Bond*, 190 A.3d 664, 667 (Pa. Super. 2018).

In general, an out-of-court statement of a witness that is consistent with his trial testimony constitutes inadmissible hearsay. *Commonwealth v. Wilson*, 861 A.2d 919, 929 (Pa. 2004). Where, however, the prior consistent statement is one of identification, it is admissible as an exception to the hearsay rule as substantive evidence, regardless of impeachment, provided that the declarant is present and subject to cross-examination. *Id.* In *Wilson*, a murder case, the defendant maintained that a witness's identification testimony was improperly augmented during direct examination, when the Commonwealth elicited that he had previously identified the defendant at a lineup and, on re-direct examination, elicited that he had provided a statement to detectives indicating what he had witnessed at the

time of the shooting. Our Supreme Court held that because the prior consistent statement concerned identification from a witness who was present and available for cross-examination, it was admissible regardless of any need for impeachment or refreshment of recollection. *Id.* at 930.

In this case, as in *Wilson*, the Commonwealth offered the audio recording of Sammons' review of the photo array as identification testimony. Moreover, Sammons was present and available for cross-examination, and defense counsel vigorously cross-examined him. Thus, the trial court properly admitted his prior consistent statement as substantive evidence.

In his next four arguments, Appellant objects to the legality of various components of his sentence. A challenge to the legality of a sentence is a question of law. An appellate court's standard of review for the legality of a sentence is *de novo* and its scope of review is plenary. *Commonwealth v. Risoldi*, 276 A.3d 279, 281 (Pa. Super. 2022). Challenges implicating the legality of sentencing are not subject to waiver and may be raised for the first time on appeal. *Id.*

Appellant argues that under 18 Pa.C.S.A. § 906, he could not be sentenced both for aggravated assault—attempted bodily injury with a deadly weapon under 18 Pa.C.S.A. § 2702 (Count 20 of his information), and conspiracy to commit aggravated assault under 18 Pa.C.S.A. § 903 (Count 74). We disagree with Appellant's interpretation of Section 906.

Prior to 1987, Section 906 read as follows:

- 16 -

A person may not be convicted of more than one offense defined by this chapter for conduct designed to commit or to culminate in the commission of the same crime.

In 1987, Section 906 was amended to provide:

A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime.

Section 906 has not been amended since 1987.

In *Commonwealth v. Ah Thank Lee*, 566 A.2d 1205 (Pa. Super. 1989), the defendant argued that the court erred in sentencing him to consecutive terms of imprisonment for conspiracy and possession of an instrument of crime because both are inchoate crimes arising from the same incident. Based on the amendment from original Section 906 to amended Section 906, we rejected this argument. *Id.* at 1208 ("Section 906 now only prohibits multiple convictions of the inchoate crimes of criminal attempt, [18 Pa.C.S.A. §] 901, criminal solicitation, [18 Pa.C.S.A. §] 902, and criminal conspiracy, [18 Pa.C.S.A. §] 903, and does not include possessing instruments of crime, [18 Pa.C.S.A. §] 907").

The same reasoning applies in this case. Section 906 only prohibits multiple convictions for crimes codified at 18 Pa.C.S.A. §§ 901, 902, and 903. It does not prohibit the combination of convictions at issue here, a conviction under Section 903 and a conviction under 18 Pa.C.S.A. § 2702 for aggravated assault. Accordingly, Appellant's argument fails.

Next, Appellant argues that the court erred by convicting and sentencing him for eight conspiracy counts (counts 56, 57, 74, 93, 97, 103, 104, 105)[3] where each crime underlying each conspiracy was part of the same continuous conspiratorial relationship. The Commonwealth agrees with Appellant's argument, and we do as well.

18 Pa.C.S.A. § 903(c) prescribes, "If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." In order for a defendant "to be convicted of [multiple] counts of conspiracy, there must be separate agreements, or separate conspiratorial relationships, to support each conviction." *Commonwealth v. Rivera*, 238 A.3d 482, 503 (Pa. Super. 2020). In determining whether a single conspiracy or multiple conspiracies have been established, we consider several relevant factors:

> The factors most commonly considered in a totality of the circumstances analysis of the single vs. multiple conspiracies issue ... are: the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the

_____

[3] Count 56—conspiracy to commit robbery; count 57—conspiracy to commit robbery; count 74—conspiracy to commit aggravated assault; count 93—conspiracy to commit burglary; count 97—conspiracy to commit kidnapping; count 103—conspiracy to commit unlawful restraint; count 104—conspiracy to commit unlawful restraint; count 105—conspiracy to commit robbery of a motor vehicle.

degree to which interdependence is needed for the overall operation to succeed.

*Id.*

The facts in **Rivera** are almost the same as in the present case. The defendant, along with several individuals, broke into a house and robbed the victim at gunpoint. The victim was shot and killed during the home invasion. The defendant was convicted of three conspiracy charges: conspiracy to commit robbery, burglary and second-degree murder. We vacated the latter two conspiracy convictions, reasoning:

> [T]he conduct of Appellant and his co-defendants did not result from three separate conspiracies. Instead, their conduct was the result of a "continuous conspiratorial relationship." 18 Pa.C.S.[A.] § 903(c). The agreement among Appellant and his co-defendants to rob Victim at gunpoint encompassed their plan to break into Victim's home (burglary) and take his money and drugs at gunpoint (robbery). The homicide (second-degree murder) that occurred during the robbery was in furtherance of the single conspiratorial goal: to rob Victim. As such, under subsection 903(c), Appellant only could be found guilty of conspiracy to commit robbery, that crime being the underlying foundation of the agreement upon which the conspiracy charges were based.

*Id.* at 504 (some internal citations omitted).

As in **Rivera**, Appellant and his cohort had only one conspiratorial goal: to rob the victims. Thus, the court could only have found Appellant guilty of conspiracy to commit robbery, because robbery was the underlying foundation of the agreement on which all conspiracy charges rested. Therefore, we affirm Appellant's conviction in Count 56 for conspiracy to commit robbery, but we vacate the conspiracy convictions and sentences on Counts 57, 74, 93, 97,

103, 104, and 105.[4]  *Rivera*, 238 A.3d at 503-04 (vacating convictions and sentences imposed in violation of 18 Pa.C.S.A. § 903).

Next, Appellant challenges the legality of his sentence of one to two years' imprisonment on count 26 for theft by unlawful taking, which the court ordered him to serve consecutively to his sentence on count 20 for aggravated assault.  Appellant argues that his theft sentence should have merged with one of his robbery sentences in Counts 2, 3, 6, or 7 as a lesser-included offense.  The Commonwealth agrees with this argument, and we do as well.[5] Appellant's conviction for theft by unlawful taking merges for purposes of

---

[4] Three additional points deserve mention.  First, had this been the trial court's only error, it would not have been necessary to remand this case for resentencing.  A remand for resentencing is not necessary when our disposition does not upset the overall sentencing scheme.  *Commonwealth v. Thur,* 906 A.2d 552, 569 (Pa. Super. 2006).  The court imposed concurrent sentences of imprisonment for Counts 57, 74, 93, 97, 103, 104, and 105, so vacating these sentences did not affect the court's overall sentencing scheme. As discussed below, however, a different sentencing error relating to Count 26 (theft) affects the overall sentencing scheme and requires us to remand this case for resentencing.

Second, since a remand for resentencing is necessary, we only affirm Appellant's conviction, but not his sentence, for conspiracy to commit robbery in Count 56.

Third, since we vacate Appellant's conviction on Count 74, we need not address Appellant's sentencing argument relating to Count 74, a claim that the court erred by imposing a maximum sentence of imprisonment greater than ten years.  Appellant's Brief at 39-40.

[5] Although Appellant did not raise the merger argument in the trial court, this argument is not waived because it concerns the legality of his sentence. *Risoldi*, 276 A.3d at 281.

sentencing with his conviction for robbery by threat of serious bodily injury (Count 3).

Under the merger statute enacted in 2003, 42 Pa.C.S.A. § 9765, merger is appropriate when "the crimes arise from a single criminal act and all of the statutory elements of one of the offenses are included within the statutory elements of another." *Id.*

Prior to enactment of the merger statute, this Court held that theft and robbery merge for sentencing purposes. *Commonwealth v. Turner*, 402 A.2d 542, 544 (Pa. Super. 1979) (explaining that by definition, robbery is committed "in the course of committing a theft"; therefore, robbery necessarily involves theft, and offenses merge for sentencing purposes). Although we have not located a definitive published decision that addresses the propriety of merging theft and robbery convictions since Section 9765's enactment, recent unpublished decisions from this Court have continued to hold that robbery and theft convictions merge for sentencing purposes. *See*, *e.g.*, *Commonwealth v. Myers*, 2020 WL 7254782, *7 (Pa. Super., Dec. 10, 2020) (unpublished memorandum) (robbery with threat of serious bodily injury conviction merged with theft by unlawful taking conviction for sentencing purposes; vacating and remanding for resentencing).

Here, Appellant's crimes of theft by unlawful taking and robbery by threat of serious bodily injury arose from a single criminal act, Appellant's threats to kill the victims unless they turned over property to Appellant and

his cohort. Pursuant to Pa.R.A.P. 126(b), we find our reasoning in **Myers** persuasive, "Since both convictions arose from the same criminal act, and since the elements of theft are subsumed within the elements of robbery as charged, theft constitutes a lesser-included offense of robbery . . . Consequently, Appellant's robbery and theft convictions should have merged for sentencing purposes." **Id.** at *7. Accordingly, we vacate Appellant's theft sentence.

Vacatur of the theft sentence upsets the trial court's overall sentencing scheme, since the court ran Appellant's theft sentence consecutive to his sentence for aggravated assault. To give the trial court the opportunity to restructure its sentencing scheme, we will vacate Appellant's sentences on all convictions we have left intact—that is, sentences on all counts other than Counts 57, 74, 93, 97, 103, 104, and 105—and remand for resentencing on these counts. **Commonwealth v. Goldhammer**, 517 A.2d 1280, 1283–84 (Pa. 1986); **Commonwealth v. Williams**, 871 A.2d 254, 266 (Pa. Super. 2005) (if trial court errs in its sentence on one count in multi-count case, all sentences for all counts will be vacated so court can restructure its entire sentencing scheme).

Finally, Appellant argues that the court abused its discretion by imposing a "manifestly excessive" aggregate sentence of twenty to forty years' imprisonment. Appellant's Brief at 47-66. No need exists to address this

claim because we are remanding this case for resentencing on all intact convictions.

Convictions and sentences for Counts 57, 74, 93, 97, 103, 104 and 105 vacated. Convictions on all other counts affirmed. Sentences on all other counts vacated. Case remanded for resentencing on all other counts. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2023